## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| The Skin Studio Day Spa, LLC, | ) | **CASE NO. 3:23-cv-02111-SAL** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| Wells Fargo Bank, NA and JPMorgan | ) | |
| Chase Bank, NA | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff, by and through the undersigned counsel, and for its First Amended Complaint, states:

### JURISDICTION

1. Plaintiff is a limited liability company whose members reside, and which is located in, Lexington County, South Carolina.

2. Wells Fargo Bank, NA, a national bank chartered and supervised by the Office of the Comptroller of Currency, headquartered in the State of California.

3. JP Morgan Chase Bank, NA ("Chase") is a national bank with its headquarters and its nerve center in the state of New York.

4. This Court has jurisdiction over the parties and subject matter of this action and venue is proper.

### FACTUAL ALLEGATIONS

5. The Plaintiff operates a successful business in Lexington County, South Carolina.

6. Plaintiff's owner and operator, Brandy Pound, was a loyal customer of Defendant Wells Fargo for nearly twenty years.

7. When Ms. Pound fulfilled her dream of opening her Studio, Defendant Wells Fargo actively solicited Plaintiff's business by making various representations about the quality and security of its business banking services, including online services.

1

8. In reliance on these representations, Plaintiff opened business checking and "Business Market Rate Savings" accounts with Defendant Wells Fargo.

9. In the meantime, in Miami Florida, Defendant Chase had assisted fraudsters, including "Lyric Nazario," in setting up accounts for nefarious purposes.

10. Upon information and belief, Defendant Chased did so despite knowing that security vulnerabilities allow such accounts to be used by persons committing fraudulent wire transfers, as evidenced by other cases filed against Chase.

11. Defendant Chase is required to monitor accounts for fraudulent or suspicious activity.

12. With respect to this account, the following factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for discovery:

    a. That, with respect to the **opening of the above account**, Defendant ignored rules jointly promulgated by the Office of the Comptroller of the Currency, the Federal Reserve System, the FDIC, the Office of Thrift Supervision, and the National Credit Union Administration governing the identification of customers, and other rules and statutes aimed at preventing fraud, knowing customers, and preventing money laundering and terrorism.

    b. That Defendant Chase turned a blind eye to irregularities in the opening of the above account and allowed identity thieves to open, use and maintain it for fraudulent purposes.

    c. That Defendant Chase knows that its accounts such as the above may be used for fraudulent wire transfers yet **chooses to fully automate the receipt** of same to ignore mismatches between account names and account numbers on inbound wire transfers, even though same would prevent fraud.

    d. That Defendant Chase knows that **monitoring accounts for suspicious activit**y, including repeated inbound wires from multiple sources or name / account number mismatches would prevent use of such accounts to commit fraud.

    e.   That Defendant Chase did not monitor the above account for suspicious activity and ignored warning signs that could likely have prevented the fraud.

    f.   That Defendant Chase knows that, following a fraudulent wire transfer, acting immediately **upon notice to freeze suspected stolen funds is critical to their preservation and recovery.**

    g.   That, as described below, Defendant Chase failed to so act, despite notice.

13. On December 1, 2022, Chase's criminal customer(s) used the account to receive a fraudulent electronic transfer, initiated from Plaintiff's Business Market Rate Savings account, in the amount of $23,765.00, as a fraudulent electronic wire instruction.

14. The funds were made payable to "Lyric Nazario", even though the account number on the order referred to a different party.

15. At no time did Plaintiff or its member, Brandy Pound, authorize the fraudulent electronic wire transaction.

16. On December 1, the same day the wire was initiated, Plaintiff's member, Brandy Pound, detected it and contacted Wells Fargo to advise them that it was fraudulent.

17. Despite receiving notice from Plaintiff, Wells Fargo took no action to contact the beneficiary bank, Chase, or to prevent any loss whatsoever to Plaintiff. Wells Fargo had actual knowledge of both the identity of the bank and the account number to which Plaintiff's money had been fraudulently wired.

18. As a direct and proximate result, on December 2, 2022, "Lyric Nazario" and an accomplice came to Chase bank in Miami, Florida, and withdrew all $23,000.00 of the stolen money, in two separate transactions occurring 34 minutes apart.

19. Upon information and belief, the remaining $734.00 remained in the account, and may be there still.

20. Although Plaintiff provided no authorization at all for the fraudulent electronic wire transfer, issued no instruction to wire the money and is not otherwise liable, Wells Fargo could have prevented the theft had it acted promptly after receiving notice.

21. Defendant Chase could have prevented the theft by following the rules described above in opening the account, and monitoring it thereafter for fraudulent activity, and by freezing the account when fraudulent activity became apparent.

22. Defendant Chase knew or should have known that the account number and the name on the payment order referred to different persons.

23. As a direct and proximate result of Defendants' failures, Plaintiff has suffered concrete and particularized harms and losses, including out-of-pocket losses, lost time spent attempting to rectify the harm caused, significant harm to its business, and other harms and losses as may be shown at trial.

24. Defendants must pay all sums needed to compensate for all harms and losses proximately caused by the wrongful acts described herein to return Plaintiff to the position enjoyed prior to wrongful injury.

25. For those harms and losses that are reasonably expected to continue into the future, Defendants must compensate for their expected continuing impact and effect.

26. Additionally, due to the intentional or reckless nature of the wrongful acts described herein, Defendants must be required to pay nominal or symbolic damages, as well as punitive damages to punish said conduct and deter its reoccurrence in the future.

27. Defendants must further be required to pay attorney's fees and costs, as well as the penalties mandated by its violation of important statutory rights referenced below.

28. All of the harms and losses caused by Defendants are likely to be redressed by a favorable judicial decision, through an award of the above damages, assessment of fines and punitive damages, an award of attorney's fees and all litigation costs, and injunctive relief.

### FOR A FIRST CAUSE OF ACTION AS TO BOTH DEFENDANTS

### (Violation of UCC Article 4A)

29. The above allegations are restated as if set forth herein verbatim, to the extent not inconsitent with this cause of action.

4

30. The definition of paying bank applies to Defendant Wells Fargo.

31. Under §3636-4A-201 et seq. paying banks such as Defendant Wells Fargo are required to exercise ordinary care in executing payment orders, including verifying the authenticity of the payment order and the identity of the receiving bank.

32. Defendant Wells Fargo did neither.

33. The acceptance of the payment order by Wells Fargo violated the above code section.

34. Further and alternatively, notification was given Defendant Wells Fargo of the cancellation of the transfer under §36-4A-211, but Defendant failed to timely heed, resulting in the loss.

35. The definition of beneficiary bank applies to Defendant Chase, who received the above payment order from a receiving bank.

36. Under S.C. Code §36-4A-207(b)(2), neither the fraudulent account holder nor any other person had rights to be paid.

37. Defendant Wells Fargo was informed virtually immediately that the electronic wire transfer was fraudulent, and thus knew that the transaction was fraudulent and should have taken action to stop it.

38. The account number on the order referred to a party with a name different than that identified on the order.

39. Defendant Chase knew or should have known that the name and account number it received referred to different persons.

40. Defenedant Chase also received notice of the cancellation of the transfer under §36-4A-211, but Defendant failed to timely act, resulting in the loss.

41. Pursuant to S.C. Code Ann. § 36-4A-207(b)(2), because Chase knew that the name and account number did not match, it must return the transmitted funds, as the so-called "Lyric Nazario" was not entitled to receive payment from Plaintiff.

42. To the extent that Defendant Chase retained transferred funds at or after receipt of cancellation, its actions violate the above code section and constitute conversion.

43. Because of the violations of the above code sections, actual and consequential damages, interest thereon, and attorney's fees and costs should be awarded.

## FOR A SECOND CAUSE OF ACTION AS TO WELLS FARGO

### (Improper Payment / Debit of Account)

44. The above allegations are restated as if set forth herein verbatim, to the extent not inconsitent with this cause of action.

45. The parties were bound by a contractual relationship requiring Defendant to debit Plaintiff's account or initiate payments therefrom according to the instructions of the Plaintiff.

46. Plaintiff performed the contract as required; by its actions set forth above, Defendant breached the contract.

47. The actions of Defendant constitute improper payment or debiting of an account, for which Defendant is liable.

48. As a result of the violations of Defendant, injuries have been inflicted upon Plaintiff that may be recovered by way of judgment against Defendant, in a sum in excess of the face amount of the instrument(s) plus interest, other consequential damages, costs and attorney's fees.

## FOR A THIRD CAUSE OF ACTION AS TO BOTH DEFENDANTS

### (Negligence)

49. The above allegations are restated as if set forth herein verbatim, to the extent not inconsitent with this cause of action.

50. Plaintiff is a customer of Defendants or affiliates by virtue of a past or present relationship, or to the treatment of Plaintiff as "customer" by Defendanst.

6

51. Defendants benefited or sought to benefit financially from the above relationship, acquiring in the course of that relationship confidential and personal information about the Plaintiff that it used, sought to use, and/or retains in its business.

52. Defendants were required, as a matter of law, to exercise ordinary care in executing payment orders and/or verifying the authenticity of the payment order and the identity of the receiving bank.

53. Defendants were negligent in allowing the fraudster, "Lyric Nazario", to open an account, failing to discover the fraudster's improper usage of the account once opened, and failing to properly train their employees to recognize and prevent fraudulent account activity.

54. Under their duty of ordinary care, Defendants were further required, upon receipt of notice that a transaction was known to be fraudulent, to take action to preserve funds from loss.

55. Defendants failed in all respects, causing preventable harm and loss to Plaintiff for which Defendants are liable.

56. Plaintiff would further show that the initiation of the wire transfer was made by exploiting unreasonable or inadequate procedures that are known by Defendants to be vulnerable, and in fact have been exploited to epidemic proportions – specifically against these Defendants – in the last 18 months.

57. The collective failures committed in light of the knowledge of vulnerabilities possessed by Defendants, particularly concerning its intentional use of a fully automated wire transfer protocol that fails to verify names and account numbers, constitute breach of obligations to Plaintiff and the general public.

58. Defendants' security system and protocols are inadequate, known to be vulnerable, and are commercially unreasonable.

59. As a direct and proximate result of the negligent, careless, reckless, willful, and wanton acts and omissions of the Defendants, judgment should be granted to the Plaintiff for both actual and punitive damages.

## FOR A FOURTH CAUSE OF ACTION AS TO BOTH DEFENDANTS

### (Violation of SC Code §39-5-10, Unfair Trade Practices Act)

60. The above allegations are restated as if set forth herein verbatim, to the extent not inconsistent with this cause of action.

61. The activities of Defendants described above constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

62. Upon information and belief, Defendants took and retain to date, transfer fees associated with the fraudulent transaction, despite knowledge of its fraud.

63. Defendants further have a pattern and practice of misinforming and misleading commercial victims of fraud similar to that which occurred in this case by making false statements in its 'investigation results' letters.

64. Defendants knew or should have known that their actions or inactions could or would cause harm to innocent third-parties such as Plaintiff, including specifically via the scheme outlined above.

65. Both Wells Fargo and Chase have been repeatedly sued in numerous courts, including courts in South Carolina and the Fourth District, for similar or identical schemes, and have failed to take adequate protective measures to prevent the schemes from continuing to occur.

66. The actions of the Defendants, above described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

67. The actions of the Defendants have a real and substantial potential for repetition and affect the public interest, as is reflected in the numerous suits filed for the same or similar

fraudulent activity, as evidenced by the nearly identical pattern of activity by both Defendants in *Williams vs. Wells Fargo Bank, NA and JP Morgan Chase*, 4:23-cv-02645-SAL (pending before this Court) and *Matthews vs. Wells Fargo* (Lancaster County, South Carolina Court of Common Pleas, complaint attached as Exhibit A hereto).

68. The Plaintiff suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiff to actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs.

### FOR A FIFTH CAUSE OF ACTION AS TO BOTH DEFENDANTS

**(Conversion)**

69. Prior to the fraudulent electronic wire transfer, Plaintiff had the right to possession of the amount of $23,765.00 in its account.

70. As the holder of the account at Wells Fargo from which the funds were fraudulently transferred, Plaintiff was the only person authorized to instruct Wells Fargo to issue any payment order from the account.

71. Plaintiff at no time issued a payment order to Wells Fargo from its account to "Lyric Nazario."

72. Because Plaintiff did not issue or authorize a payment order to Wells Fargo to pay any funds to "Lyric Nazario," Wells Fargo was not authorized to make a "funds transfer" within the meaning of § 36-4A-104 *et seq*.

73. Plaintiff continues to have the right to possession of the amount of $23,765.00 which was wrongfully wired out of its account.

74. By wrongfully initiating a "funds transfer," Wells Fargo engaged in unauthorized assumption and exercise of the right of ownership over that amount of funds belonging to Plaintiff to the exclusion of Plaintiff's right to the same.

75. By wrongfully accepting the fraudulent electronic wire transfer when Chase knew that the account number and name on the payment order did not match, Chase engaged in the

9

unauthorized assumption and exercise of the right of ownership over that amount of funds belonging to Plaintiff to the exclusion of Plaintiff's right to the same.

76. Plaintiff reported the fraudulent wire activity the very same day that it occurred.

77. Despite the immediate reporting, Wells Fargo took no action at all to ensure the transaction was stopped.

78. Chase knew that the account number did not match the name on the payment order, but took no action to investigate or otherwise stop the fraudulent transaction from occurring.

79. Defendants' actions have been willful, reckless, and/or committed with conscious indifference to Plaintiff's rights.

80. The Plaintiff suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiff to actual damages in an amount to be proven at trial, along with punitive damages, and an award of attorney's fees and costs.

## FOR A SIXTH CAUSE OF ACTION AS TO BOTH DEFENDANTS

### (Money Had and Received)

81. Plaintiff never authorized the amount of $23,765.00 to be removed from its account and paid to "Lyric Nazario."

82. Despite the lack of authorization, Wells Fargo wired this amount to Chase.

83. This amount belongs to Plaintiff, and in equity it should be repaid to Plaintiff.

84. The Plaintiff suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiff to actual damages in an amount to be proven at trial, along with an award of attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff judgment in an amount sufficient to compensate Plaintiff for actual damages, together with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

_____

Dave Maxfield, Esq., Fed ID 6293
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

June 26, 2023