**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| The Skin Studio Day Spa, LLC, | ) | **CASE NO. 3:23-cv-02111-SAL** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS FIRST** |
| Wells Fargo Bank, NA and JPMorgan | ) | **AMENDED COMPLAINT** |
| Chase Bank, NA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff Skin Studio Day Spa, LLC ("Plaintiff"), asserts that it was the victim of a "fraudster" who supposedly stole thousands of dollars from its bank account through "a fraudulent electronic wire instruction." But rather than seeking to hold the culpable party accountable, Plaintiff seeks to hold its own bank, Wells Fargo Bank, NA ("Wells Fargo"), and the beneficiary bank, JPMorgan Chase Bank, N.A. ("Chase"), liable for that loss. Plaintiff does so even in the face of clear and dispositive law that it attempts to circumvent with unsupported conclusory allegations. It originally asserted claims for violation of Article 4A of the Uniform Commercial Code ("UCC"), negligence, and violation of the South Carolina Unfair Trade Practices Act ("UTPA"). After answering, Chase moved for judgment on the pleadings on all those claims. *See* Docket No. 17.

Rather than responding to that motion, Plaintiff has filed its First Amended Complaint, raising additional claims for conversion and money had and received. *See* Docket No. 19. But its newfound theories are no more plausible than the original. Chase not only fully complied with its obligations under Article 4A, Plaintiff lacks privity with Chase as the beneficiary bank, and as a non-customer, Plaintiff was owed no common law duty by Chase. The UTPA is also inapplicable

to the disputed wire, and even if it were, Plaintiff has failed to state a plausible UTPA claim. And Plaintiff cannot plausibly allege the necessary elements of either a conversion or money had and received claim based upon the "fraudulent" wire, and even if it could, any such claims would yet be displaced by Article 4A. Accordingly, all of Plaintiff's claims against Chase should be dismissed with prejudice. *See* Fed. R. Civ. P. 12(b)(6).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a "successful business" in Lexington County, owned by Brandy Pound. *See* Docket No. 19 at ¶¶ 5-6. Pound was a customer of Wells Fargo "for nearly twenty years" and opened checking and savings accounts with Wells Fargo when she started her new business. *See* Docket No. 19 at ¶¶ 6-8.

At some unspecified time, Plaintiff alleged that Chase allowed "fraudsters, including 'Lyric Nazario,'" to open accounts in Miami, Florida, for "nefarious purposes." *See* Docket No. 19 at ¶ 9. It alleged opening the accounts violated certain unspecified regulations of the Office of the Comptroller of the Currency ("OCC") and other government agencies that were "aimed at preventing fraud." *See* Docket No. 19 at ¶ 12. Plaintiff does not allege that it was a customer of Chase or that it had any other relationship with Chase. *See* Docket No. 19.

On December 1, 2022, Plaintiff alleged that "Chase's criminal customer(s) used [its] account to receive a fraudulent electronic transfer initiated from Plaintiff's" Wells Fargo business savings account in the amount of $23,765.00. *See* Docket No. 19 at ¶ 13. That same day, Plaintiff "detected" the transfer and "contacted Wells Fargo to advise them [sic] that it was fraudulent." *See* Docket No. 19 at ¶ 16. According to Plaintiff, "Wells Fargo took no action to contact the beneficiary bank, Chase, and prevent any loss whatsoever to Plaintiff." *See* Docket No. 19 at ¶ 17. On December 2, 2022, Nazario and an accomplice withdrew "$23,000.00 of the stolen

money" from the Chase account. *See* Docket No. 19 at ¶ 18. Plaintiff alleged that Wells Fargo and Chase "could have prevented the theft" if they had acted promptly after receiving notice and if they had followed the unspecified "rules." *See* Docket No. 19 at ¶¶ 20-21.

Plaintiff filed this action against Wells Fargo and Chase on April 11, 2023, in the Court of Common Pleas of Lexington County. *See* Docket No. 1-1. The Complaint raised four separate counts. *See* Docket No. 1-1 at ¶¶ 26-60. First, Plaintiff alleged both Wells Fargo and Chase violated the provisions of Article 4A of the Uniform Commercial Code ("UCC"), S.C. Code Ann. § 36-4A-101, *et seq.* *See* Docket No. 1-1 at ¶¶ 26-37. Second, it asserted that Wells Fargo improperly debited the funds from its account. *See* Docket No. 1-1 at ¶¶ 39-43. Third, Plaintiff asserted that both Defendants were negligent by failing to "exercise ordinary care in executing the payment order and/or verifying the authenticity of the payment order and the identity of the receiving bank." *See* Docket No. 1-1 at ¶¶ 44-53. Fourth, it alleged that both Defendants committed "unfair and deceptive acts and practice" relating to the wire transfer in violation of S.C. Code Ann. § 39-5-10, *et seq.* *See* Docket No. 1-1 at ¶¶ 54-60. Plaintiff demanded "treble" damages, actual damages, punitive damages, and attorney's fees. *See* Docket No. 1-1 at ¶¶ 19-25 & 60.

Chase timely removed this action to this Court on May 17, 2023, based upon diversity jurisdiction with the consent of Wells Fargo. *See* Docket Nos. 1 & 4. It then filed a Motion for Judgment on the Pleadings on June 14, 2023. *See* Docket No. 17. In response, Plaintiff then filed its First Amended Complaint on June 27, 2023. *See* Docket No. 19. With few exceptions, the factual allegations of the new pleading are identical to those of the original.[1] *Compare* Docket

---

[1] The new factual allegations in the First Amended Complaint appear to be in paragraphs 14, 15, 20 and 22. *Compare* Docket No. 1-1 *with* Docket No. 19.

No. 1-1 *with* Docket No. 19.  In addition to the four original counts, the First Amended Complaint also raised new counts for conversion and money had and received.  *See* Docket 19 at ¶¶ 69-84.

### III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the formal sufficiency of the claim for relief.  *See* 5B Wright & Miller, Fed. Prac. & Proc. § 1356 (3d ed.).  Although "well-pleaded allegations of the complaint" are taken as true, the "Court need not . . . accept the plaintiff's legal conclusions." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022); *Martineau v. Wier*, 485 F. Supp. 3d 637, 643 (D.S.C. 2020).  Rather, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter[s], accepted as true, to state a claim to relief that is plausible on its face." *Martineau*, 485 F. Supp. 3d at 643 (citations and internal quotation marks omitted).  The rule also "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citation omitted).

### IV.  ARGUMENT

**A.     Plaintiff's Article 4A Claims are Implausible.**

As the beneficiary bank in the underlying transaction, Plaintiff seeks to hold Chase liable under two provisions of Article 4A.  *See* Docket No. 19 at ¶¶ 29-43.  First, Plaintiff argues that § 207(b)(2) was violated because no one "had rights to be paid" under the payment order because the "account number on the order referred to a party with a name different than that identified on that order." *See* Docket No. 19 at ¶¶ 36 & 38.  Second, Plaintiff argues that Chase "failed to timely act" in response to its "notice of the cancellation of the transfer under § 36-4A-211." *See* Docket

No. 19 at ¶ 40.  For multiple reasons, none of Plaintiff's putative Article 4A claims against Chase are plausible.

Based upon its own allegations, Plaintiff was the "originator" of the funds transfer and "sender" of the payment order because the wire transfer "initiated from" its account.  *See* S.C. Code Ann. §§ 36-4A-103(a)(5) & 104(c); Docket No. 19 at ¶ 13.  Wells Fargo was the "originator's bank" and a "receiving bank" because the payment order was "addressed" and "issued" to it.  *See* S.C. Code Ann. §§ 36-4A-103(a)(4) & 104(d).  Chase was the "beneficiary bank" because it held the account "to be credited pursuant to the order."  *See* S.C. Code Ann. § 36-4A-103(a)(3).  Plaintiff contends that Chase breached its obligations under § 4A-207(b)(2), because no one "had rights to be paid" based upon the supposed fraudulent wire.  *See* Docket No. 19 at ¶¶ 35-36.  For multiple reasons, it is mistaken.

Article 4A provides for "an orderly unraveling of a funds transfer in the event that a transfer was not completed . . . incorporating a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole."  *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998).  Thus, the originator of a funds transfer lacks standing to raise any claim against the beneficiary bank because of its lack of privity with the beneficiary bank.  *See Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) (finding "lack of privity" between originators and beneficiary bank, and holding originators "cannot maintain a cause of action against [beneficiary bank] under Sec. 4-A-207"); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 981 (W.D. Tenn. 2020) (finding "lack of privity between plaintiffs and the beneficiary's bank in cases involving alleged violations of § 207").

5

Substantively, Plaintiff's § 207 claim fairs no better.  *See* Docket No. 19 at ¶¶ 29-43.  That section applies when there is a "misdescription" of the beneficiary because the beneficiary is either "nonexistent or unidentifiable," or there is a discrepancy between the named beneficiary and account number in the payment order resulting in "different persons" being identified.  *See* S.C. Code Ann. § 36-4A-207(a) & (b); *see also Song Chuan Tech. (Fujian) Co., Ltd. v. Bank of America, NA*, Civil Action No. 2:16-3269-RMG, 2017 WL 1862207, at *2 (D.S.C. May 8, 2017).

Here, Plaintiff now asserts that the beneficiary and "the account number on the order referred to a different party."  *See* Docket No. 19 at ¶¶ 14 & 41.  However, "[t]he beneficiary's bank need not determine whether the name and number refer to the same person," and Plaintiff has alleged no facts to establish Chase had such actual knowledge.[2]  *See* S.C. Code Ann. § 36-4A-207(b)(1); *Berry*, 507 F. Supp. 3d at 980 ("[Section] 207(b) permits the beneficiary's bank to rely on the account number if the bank did not know that the name and number referred to different persons.").

Moreover, Plaintiff concedes that the supposed "fraudster" beneficiary and account number matched perfectly because the fraudster opened the account for its own "nefarious purposes."  *See* Docket No. 19 at ¶¶ 9, 13 & 17.  By its own admission, Plaintiff plainly concedes Chase processed the wire transfer exactly as instructed, and yet seeks to hold it liable.  *See* Docket No. 19 at ¶¶ 13-18.  Such a position is untenable under Article 4A, as is Plaintiff's claim.  Thus, even if it had standing, Plaintiff has completely failed to plead a plausible § 207 claim against Chase.  *See*

---

[2] Without providing any factual basis for its contention, Plaintiff asserts Chase "knew or should have known" about the fraudulent account and name/number discrepancy.  *See* Docket No. 19 at ¶¶ 11-14, 22 & 41.  Under the UCC, "knowledge" means only "actual knowledge."  *See* S.C. Code Ann. § 36-1-202(b).  The official comment to § 207 also confirms that "actual knowledge" is required.  *See* S.C. Code Ann. § 36-4A-207 (official comment No. 2).  The First Amended Complaint, however, "meets neither the plausibility standard of Rule 8 nor the heightened standard [of] Rule 9(b) applicable to claims sounding in fraud" to establish any actual knowledge.  *See DeFazio v. Wells Fargo Bank, NA*, Civil Action No. 20-375 (SRC), 2020 WL 1888252, at *5 (D.N.J. Apr. 16, 2020).

*Frankel-Ross v. Congregation OHR Hatalmud*, 15 Civ. 6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016) (holding Article 4A's "remedial scheme" prohibited originator's claim against beneficiary bank "even assuming" name and account number "identified different persons").

Next, Plaintiff asserts that Chase failed to timely "cancel" the payment order pursuant to § 4A-211. *See* Docket No. 19 at ¶ 40. Again, for multiple reasons, it is mistaken. First, as this Court has previously recognized, § 4A-211 "provides no cause of action to the party sending the funds." *Song Chuan Tech.*, 2017 WL 1862207, at *3. "The originator of a funds transfer cannot cancel a payment order to the beneficiary's bank." S.C. Code Ann. § 36-4A-404, cmt. 3. "Thus, the beneficiary's bank may safely ignore any instruction by the originator to withhold payment to the beneficiary." *Id.* As such, Plaintiff lacks standing to assert any claim against Chase for the alleged failure to cancel the wire transfer. Second, its conclusory allegation that "Chase [] received notice of cancellation" notwithstanding, Plaintiff actually admitted that "Wells Fargo took no action to contact the beneficiary bank, Chase, and prevent any loss whatsoever to Plaintiff." *See* Docket No. 19 at ¶¶ 17 & 40. And finally, Plaintiff does not even allege that Chase "agree[d]" to cancel the payment order as required by § 211. *Compare* S.C. Code Ann. § 36-4A-211(c) *with* Docket No. 19. Rather, it concedes Chase accepted the funds and disbursed them to the designated beneficiary, rendering any putative § 4A-211 claim "implausible, given the refusal to return the funds." *Song Chuan Tech.*, 2017 WL 1862207, at *4; Docket No. 19 at ¶¶ 13-18. And having done so, Chase was also "obligated to pay" the designated beneficiary. *See* S.C. Code Ann. § 36-4A-404(a). Accordingly, all of Plaintiff's Article 4A claims against Chase should be dismissed with prejudice.

7

**B.     Plaintiff has Failed to State a Claim for Negligence.[3]**

Plaintiff was not a "customer" of Chase and has no relationship with it.  *See* Docket No. 19. Rather, as it concedes, Chase was the beneficiary bank in the disputed transaction.  *See* Docket No. 19 at ¶ 35.  Thus, Chase owed Plaintiff no common law duty of care relating to the underlying wire, and any such duty would also be displaced by Article 4A of the UCC.  Accordingly, Plaintiff's negligence claims against Chase must be dismissed with prejudice.

**1.     Chase Owed No Common Law Duty to Plaintiff.**

"To assert direct liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendants owed him a duty of care; (2) defendants breached this duty by a negligent act or omission; (3) defendants' breach was the proximate cause of their injuries; and (4) he suffered injury or damages." *Midland Mortg. Corp. v. Wells Fargo Bank, NA*, 926 F.Supp.2d 780, 786 (D.S.C. 2013) (citation omitted).  "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Id.* at 786-87 (citation and internal quotation marks omitted). "If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Wright v. PRG Real Est. Mgmt., Inc.*, 826 S.E.2d 285, 290 (S.C. 2019) (citation and internal quotation marks omitted).

"An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Carson v. Adgar*, 486 S.E.2d 3, 5 (S.C. 1997) (citation omitted).  As it relates to the conduct of third parties, there is "no general duty to control the conduct of another or to warn a [another] person or potential victim of danger." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 535 (D.S.C. 2014) (citation and internal

---

[3] Plaintiff's second cause of action for "improper payment" was not directed toward Chase. *See* Docket No. 19 at ¶¶ 44-48.

quotation marks omitted).  There is also "no basis in the law for finding that [a bank] owed a duty to [plaintiffs], as non-customer[s] [], sufficient to support [] claims for negligence[.]"  *Kerr v. Branch Bank & Trust Co.*, 759 S.E.2d 724, 726 (S.C. 2014).  Thus, this Court has recently held: "In South Carolina, banks 'neither owe a duty of care to *customers or non-customers.*'"  *AlphaVets, Inc. v. JPMorgan Chase Bank, NA*, ___ F. Supp. 3d ___, Civil No. 0:22-cv-02122-SAL, 2023 WL 3486021, at *3 (D.S.C. Jan. 19, 2023) (cleaned-up; emphasis in original).

Its conclusory allegations notwithstanding, Chase owed Plaintiff no common law duty relating to the disputed wire.  *See* Docket No. 19 at ¶ 49-59.  Plaintiff admits a "criminal," Nazario, "initiated" the "fraudulent electronic wire" from its Wells Fargo savings account.  *See* Docket No. 19 at ¶ 13.  Nazario and his "accomplice" then "stole" the money after it was transferred to the Chase account.  *See* Docket No. 19 at ¶ 18.  Because it has no relationship with Plaintiff, Chase owed no duty of care to Plaintiff.  *See Carson*, 486 S.E.2d at 5.  And even if it had been a customer of the bank, Chase would still not owe Plaintiff any duty to support a putative negligence claim.  *See AlphaVets*, 2023 WL 3486021, at *3.

Nevertheless, Plaintiff attempts to premise its negligence claim upon certain unspecified regulations of the OCC and other federal agencies.  *See* Docket No. 19 at ¶ 12.  Not only has it failed to identify what regulations it relies upon or establish how they apply to Chase, Plaintiff has completely failed to demonstrate that it has a private right of action under any of those mystery provisions.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding "private rights of action to enforce federal law must be created by Congress").  But this Court and others have "unanimously held" there are no "private causes of action" under the Bank Secrecy Act, the Patriot Act, or any "anti-money laundering" regulations to support such a claim.  *See AlphaVets*, 2023 WL 3486021, at *4 n. 1; *Big Red Box, LLC v. Square, Inc.*, C/A No. 3:18-758-SAL-SVH, 2020

WL 465928, at *14 (D.S.C. Jan. 22, 2020); *see also Best v. Green Dot Corp.*, No. 4:22-CV-146-FL, 2023 WL 2733413, at *2 (E.D.N.C. Feb. 14, 2023). And banks "owe[] no duty to nondepositors to investigate or disclose suspicious activities on the part of an accountholder." *Venture Gen. Agency, LLC v. Wells Fargo Bank, NA*, Case No. 19-cv-02778-TSH, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019) (collecting cases; internal quotation marks and citations omitted); *see also AlphaVets*, 2023 WL 3486021, at *3 (rejecting claims for allowing "fraudster to open an account" and failure to monitor "suspicious" activity). Thus, Plaintiff was owed no duty by Chase to sustain a negligence claim.

### 2. Plaintiff Does Not Plausibly Allege Proximate Cause.

Plaintiff has also failed to allege proximate cause to support such a claim. *See Midland Mortg.*, 926 F. Supp. 2d at 786. "The touchstone of proximate cause in South Carolina is foreseeability." *Butler v. Mut. Safe Co., Inc.*, 35 F.3d 555, at *2 (4th Cir. 1994) (unpublished; cleaned-up) (holding "sole proximate cause of the loss suffered by the plaintiffs was the theft of the safe from the store" and not the alleged design defect). "The general rule of law is that when, between negligence and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person producing the injury, but that such was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken." *Stone v. Bethea*, 161 S.E.2d 171, 173-74 (S.C. 1968) (citation omitted).

Courts have routinely found proximate cause lacking in fraud-related cases against banks. For example, in *Marshall*, the plaintiffs became victims of a Ponzi scheme and sued the bank for negligence because it failed to detect and stop the scam. *Marshall v. Nat'l Bank of Middlebury*, Civil Action No. 5:19-cv-246, 2021 WL 6803284, at *2-3 (D. Vt. Dec. 3, 2021). The District Court, however, held that the plaintiff's negligence claim must be dismissed because "the criminal

act generally breaks the chain of causation and thus the [alleged] original negligence of the defendant cannot be the proximate cause of the injury resulting from the intervening criminal act." *Id.* at \*17 (internal quotation marks and citation omitted).

Here, Plaintiff has not alleged proximate cause as to Chase for the "fraudulent electronic wire instruction." *See* Docket No. 19 at ¶ 13.  Although it argues that Chase failed to monitor for "suspicious activity" and did not timely "freeze" the account, Plaintiff concedes that the money was "stolen" by Nazario after the wire transfer was accepted and without any notice of the alleged fraud. *See* Docket No. 19 at ¶¶ 17-18.  That intervening "criminal act of a third person producing injury" broke any "causal chain" between Plaintiff's alleged injury and Chase.  *See Stone*, 161 S.E.2d at 173-74.  Because it cannot establish proximate causation, Plaintiff's negligence claim also fails as a matter of law.

**3.     Plaintiff's Negligence Claims are Displaced by the UCC.**

Even if it owed Plaintiff some common law duty relating to the disputed wire, any such claim against Chase is displaced by Article 4A of the UCC.  *See* S.C. Code Ann. § 36-4A-101, *et seq.*  As the official comments provide:

> Funds transfers involve competing interests-those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are ***intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties*** in any situation covered by particular provisions of the Article. Consequently, ***resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article***.

S.C. Code Ann. § 36-4A-102 (official comment; emphasis added).

11

Accordingly, courts have widely recognized that corresponding negligence claims relating to wire transfers are preempted or displaced by the UCC. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th Cir. 2002) (holding negligence claims preempted insofar as they challenged the bank's processing of the wire transfer); *see also Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 Fed. App'x 741, 750 (11th Cir. 2019) ("[The] district court did not err when it concluded that Article 4A preempted Shapiro's common law negligence claim . . . ."); *Patco Constr. Co. v. People's United Bank*, 684 F.3d 197, 215 (1st Cir. 2012) ("Resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.") (citation omitted); *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010) ("Article 4A precludes customers from bringing common law claims inconsistent with the statute."). This Court has also found similar negligence claims preempted. In *Atlantic Energy Group*, this Court held an originator's claims against a beneficiary bank for negligence and breach of fiduciary duty were preempted by Article 4A. *Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 813-14 (D.S.C. 2014).

Having asserted claims against Chase under the UCC, Plaintiff has admitted that Article 4A is applicable to the "fraudulent electronic wire" it is disputing. *See* Docket No. 19 at ¶¶ 13 & 29-43. It also admits that Chase was the "beneficiary bank" for that wire. *Compare* Docket No. 19 at ¶¶ 13 & 35 *with* S.C. Code Ann. §§ 36-4A-103(a)(3) (defining beneficiary bank) & 36-4A-404 (providing obligation of beneficiary bank to pay). Because Article 4A "comprehensively address[es]" the rights and liabilities of a beneficiary bank, it completely displaces any other claims Plaintiff could otherwise assert. *See Atl. Energy Grp.,* 53 F. Supp. 3d at 815. Therefore, Plaintiff's negligence claims against Chase are preempted and must be dismissed with prejudice.

**C.      Plaintiff's UTPA Claim is Untenable.**

Plaintiff next asserts that the Defendants violated the UTPA.  *See* Docket No. 19 at ¶¶ 60-68.  Not only is the UTPA inapplicable to the transaction at issue, Plaintiff has failed to plead a plausible claim for its alleged violation.

As this Court has held:

> A claim for violation of the SCUTPA has three elements that a plaintiff must establish: (1) that the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the trade practice; and (3) the unlawful trade practice had an adverse impact on the public interest. *See Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 579 (D.S.C. 2003), *aff'd sub nom.* 115 F. App'x 636 (4th Cir. 2004); S.C. Code Ann. § 39-5-140(a). As to the third element, South Carolina law is clear that "[t]he [A]ct is not available to redress a private wrong where the public interest is unaffected." *Columbia E. Assoc. v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989); *see also Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 349 (S.C. Ct. App. 1986) ("The legislature's intent [was] to limit the application of the UTPA to only those unfair or deceptive acts or practices in the conduct of trade or commerce that affect the public interest[.]").

*Synovus Bank v. Stevens Law Firm*, C/A No. 4:19-cv-01411-SAL, 2020 WL 12788154, at *5 (D.S.C. July 20, 2020).  Plaintiff has not, and cannot, plausibly allege any of the necessary elements for a UTPA claim.

First, Plaintiff has not plausibly alleged that Chase "engaged in an unlawful trade practice." *See Synovus Bank*, 2020 WL 12788154, at *5.  Rather, as demonstrated herein, all of Plaintiff's claims under Article 4A and otherwise are themselves implausible because, *inter alia*, Chase complied with the "unique [statutorily mandated] method of payment . . . governed by unique rules that address the particular issues raised by this method of payment."  S.C. Code Ann. § 36-4A-102 (official comment).  Thus, Plaintiff has not alleged any "[u]nfair methods of competition [or] unfair or deceptive acts or practices in the conduct of any trade or commerce" to state a plausible UTPA

13

violation.[4]  *See* S.C. Code Ann. § 39-5-20(a); *Camp v. Spring Mortg. Corp.*, 426 S.E.2d 304, 306 (S.C. 19963) (holding complaint failed to state UTPA claim "because no unfair or deceptive act is alleged").

Second, Plaintiff has failed to plausibly allege that it has "suffered actual, ascertainable damages."  *See Synovus Bank*, 2020 WL 12788154, at *5.  Article 4A is "the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article."  S.C. Code Ann. § 36-4A-102 (official comment).  Because Plaintiff bears the risk of loss for execution of its payment order under Article 4A, it has no "ascertainable damages" it can claim against Chase.  *See, e.g., Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d. 485, 492-96 (D.N.J. 2022)

Finally, Plaintiff makes only a conclusory assertion of "a real and substantial potential for repetition and effect on the public interest."  *See* Docket No. 19 at ¶ 67.  The First Amended Complaint offers no factual allegations relating to any other transactions or the public-at-large.  *See* Docket No. 19.  Instead, it merely parrots the conclusory allegations of Plaintiff's counsel from other litigation in an attempt to meet that burden.  *See* Docket No. 19 at ¶ 67.  But merely repeating the same conclusory allegation over and over again does not make it any less implausible.  *See Twombly*, 550 U.S. at 570.  Thus, Plaintiff's "claim is a 'purely private dispute between [the] parties' and, as a result, the UTPA [claim] is subject to dismissal."  *See Synovus Bank*, 2020 WL 12788154, at *6; *see also Schwartz v. Wells Fargo Bank, NA*, Civil Action No. 2:22-2081-RMG, 2022 WL 16554632, at *3 (D.S.C. Oct. 28, 2022) ("Even viewing the facts in a light most favorable to her,

---

[4] To the extent there was any conflict between Article 4A and the UTPA, Article 4A would control because "a specific statute prevails over a more general one."  *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 462 S.E.2d 858, 859 (S.C. 1995) (holding UCC statute of limitations prevailed over general statute of limitations).

Plaintiff pleads no facts showing Defendant acted similarly in the past nor does Plaintiff plead nonconclusory facts showing Defendant's acts were the results of 'specific procedures or business practices that create the potential for repetition.'").

**D.      Plaintiff Has Not Stated A Claim For Conversion.**

Plaintiff's conversion claim against Chase rests solely upon its conclusory assertion that, "By wrongfully accepting the fraudulent electronic wire transfer when Chase knew that the account number and name on the payment order did not match, Chase engaged in the unauthorized assumption and exercise of the right of ownership over that amount of funds belonging to Plaintiff to the exclusion of Plaintiff's right to the same." *See* Docket No. 19 at ¶ 75.  Not only has Plaintiff failed to state a plausible conversion claim, any such claim is equally displaced by the Article 4A.

Under South Carolina law, a valid claim for conversion is only applicable to "goods or personal chattels." *Castell v. Stephenson Fin. Co.*, 135 S.E.2d 311, 313 (S.C. 1964).  Money can only be converted if "there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff." *Richardson's Rests., Inc. v. Nat'l Bank of S.C.*, 403 S.E.2d 669, 672 (S.C. Ct. App. 1991).  "A mere obligation to pay a debt is insufficient to sustain a conversion action." *Senn Freight Lines Inc. v. Am. Inter-Fidelity Corp.*, C/A No. 8:17-cv-02186-JDA, 2020 WL 9894191, at *8 (D.S.C. July 31, 2020) (internal quotation marks omitted).  It also requires either "a wrongful taking" or "illegal assumption of ownership" over the property.  *Castell*, 135 S.E.2d at 313 (citation omitted); *see also Owens v. Zippy Mart of S.C., Inc.*, 234 S.E.2d 217, 218 (S.C. 1977) ("Conversion is a wrongful act and cannot arise from the exercise of a legal right.").  But "once funds are deposited in a bank account, the funds become property of the bank," so as to preclude any conversion claim.  *See Song Chuan Tech.*, 2017 WL 980248, at *2 (internal quotation marks and citations omitted).

The "funds" Plaintiff seeks to recover were not capable of being converted. *See* Docket No. 19 at ¶¶ 69-80. Those funds were merely deposited in the beneficiary's account and not independently "identifiable." *See Richardson's Rests.,* 403 S.E.2d at 672. The mere fact that Plaintiff knows the "amount" that was taken does not make the fund itself "identifiable," and subject to conversion. *See, e.g., Edwards v. Prime, Inc.*, 602 F.3d 1276, 1304 (11th Cir. 2010) ("Identifiable amounts of money are one thing, specific money capable of identification is another."). Plaintiff has also completely failed to allege any "wrongful" or "illegal" conduct by Chase. *See Castell*, 135 S.E.2d at 313. As it concedes, Chase merely passively "accept[ed]" the funds as the beneficiary bank and disbursed them as instructed. *See* Docket No. 19 at ¶ 75; S.C. Code Ann. § 36-4A-404. Not only did it not benefit from the funds, Chase owed Plaintiff no duty to verify the name and account number of the beneficiary. *See* S.C. Code Ann. § 36-4A-207. Thus, it has completely failed to state a plausible conversion claim.

Moreover, any conversion claim would also be preempted Article 4A because "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." S.C. Code Ann. § 36-4A-102 (official comment). Thus, the Fourth Circuit has recently confirmed that "state law claims for conversion" relating to a wire transfer "are preempted by Article 4A." *Blue Flame Med., LLC v. Chain Bridge Bank, NA*, No. 21-2218, No. 22-2219, 2023 WL 2570971, at *6 (4th Cir. Mar. 20, 2023).

**E.      Plaintiff Has No Plausible Claim For Money Had and Received.**

Plaintiff argues that because it "never authorized" the disputed funds to be transferred to the fraudster the money "should be repaid to [it]." *See* Docket No. 19 at ¶¶ 81 & 83. It styles this new claim as one for "Money Had and Received." *See* Docket No. 19 at ¶¶ 81-84. No matter how it may be characterized, the claim is again both implausible and displaced by Article 4A.

16

In South Carolina, a claim for money had and received is subject to principles of equity: "the plaintiff must show he has equity and conscience on his side, and that he could recover in a court of equity." *Okatie River, LLC v. Se. Site Prep, L.L.C.*, 577 S.E.2d 468, 472 (S.C. Ct. App. 2003). The claim has long been "subsumed and amalgamated under the theories of quantum meruit/quasi-contract/implied by law actions." *Id.* at 473. To state any such a claim, the plaintiff must allege "(1) a benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Id.* "It is well known that equity follows the law" and "is generally available only where there is no adequate remedy at law." *Smith v. Barr*, 650 S.E.2d 486, 490 (S.C. Ct. App. 2007) (citation omitted); *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 379 S.E.2d 119, 123 (S.C. 1989).

Here, Plaintiff did not "confer" any benefit upon Chase. *See Okatie River*, 577 S.E.2d at 473. Rather, it admits that the funds were misappropriated by a "criminal" for "nefarious purposes." *See* Docket No. 19 at ¶¶ 9 & 13. Chase also did not realize any "benefit" from those funds, as they were "withdrawn" by the supposed fraudster. *See* Docket No. 19 at ¶ 18. And because they were withdrawn, manifestly Chase did not "retain" any benefit from those disputed wire proceeds. *See Okatie River*, 577 S.E.2d at 473. Finally, equity cannot be invoked by Plaintiff to provide it relief that would be "inconsistent" with the rights and liabilities provided for under Article 4A. *See* S.C. Code Ann. § 36-4A-102 (official comment). Thus, the claim for money had and received must be dismissed.

**F.     Plaintiff's Punitive Damages Claim Has No Factual or Legal Basis.**

Finally, Plaintiff is not entitled to punitive damages. "Simple negligence affords no basis for an award of punitive damages." *Cohen v. Allendale Coca-Cola Bottling Co.*, 351 S.E.2d 897,

900 (S.C. Ct. App. 1986).  A plaintiff may only recover punitive damages when there is "clear and convincing evidence the defendant's conduct was willful, wanton, or in reckless disregard for the plaintiff's rights." *Solanki v. Wal-Mart Store #2806*, 763 S.E.2d 615, 618 (S.C. Ct. App. 2014).

Here, there is no basis for punitive damages.  While Plaintiff demands punitive damages, the Complaint fails to allege any willful, wanton, or reckless conduct to support such an award. *See Solanki*, 763 S.E.2d at 618.  Plaintiff's allegations are that Chase opened an account for its customer and allowed its customer to complete withdrawals from its account.  *See* Docket No. 1-1 at ¶¶ 13 & 16.  There are no factual allegations that amount to Chase having knowledge of any wrongdoing that would raise such basic acts to willful, wanton, or reckless.  *See* Docket No. 1-1. Therefore, any claim for punitive damages must be dismissed.

## V.     CONCLUSION

Plaintiff has failed to allege a plausible claim for relief under any of the theories asserted. *See* Fed. R. Civ. P. 12(b)(6).  Accordingly, all of its claims against Chase should be dismissed with prejudice.

Dated:  July 11, 2023

**BURR & FORMAN LLP**

    s/Taylor K. Voegel
Taylor K. Voegel, Fed. ID No. 14023
2411 N. Oak Street, Suite 206 (29577)
Post Office Box 336
Myrtle Beach, SC 29578-0336
Ph:     843.444.1107
Fax:    843.444.4729
Email:  tvoegel@burr.com

***Attorney for Defendant JPMorgan Chase Bank, N.A.***