IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Skin Studio Day Spa, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Wells Fargo Bank, NA, and JP Morgan Chase Bank, NA, <br><br> Defendants. | Case No. 3:23-cv-2111-SAL <br><br><br><br> **ORDER** |

This matter is before the court on Defendants Wells Fargo Bank, NA ("Wells Fargo") and JP Morgan Chase Bank, NA's ("JPMorgan") motions to dismiss. [ECF Nos. 20, 22.] For the reasons below, the court grants in part and denies in part Defendants' motions.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Skin Studio Day Spa, LLC ("Skin Studio"), is a South Carolina-based company. [ECF No. 19 ¶ 1.] At all times relevant to this action, Skin Studio maintained a business checking and savings account with Wells Fargo. *Id.* ¶¶ 6–8. On December 1, 2022, an electronic transfer in the amount of $23,765 was allegedly initiated from Skin Studio's business savings account to an account operated by JPMorgan. *Id.* ¶ 13. Skin Studio claims that a JPMorgan customer named "Lyric Nazario" and an accomplice withdrew all but $734 the following day. *Id.* ¶¶ 14–20.

Skin Studio later sued Wells Fargo and JPMorgan, arguing both banks enabled this allegedly fraudulent transaction. It specifically claims Wells Fargo failed to promptly respond when notified that the transaction was unauthorized. *Id.* ¶ 20. As to JPMorgan, Skin Studio alleges the bank improperly monitored an account opened by "criminal customer(s)" and failed to "freeze" the account "when fraudulent activity became apparent." *Id.* ¶¶ 12–13, 21. Skin Studio brings claims against both Defendants for violations of S.C. Code Ann. §§ 36-4A-201, *et seq.* ("Article

1

4A of the Uniform Commercial Code") and 39-5-10, *et seq.* (the "South Carolina Unfair Trade Practices Act"), negligence, conversion, and for money had and received. *Id.* ¶¶ 29–43, 49–84. It also seeks relief against only Wells Fargo for improper payment or debiting of an account. *Id.* ¶¶ 44–48.

Both Defendants now move to dismiss Skin Studio's Amended Complaint, ECF No. 19, just as they did with the original complaint, ECF No. 1-1. Defendants' initial motions to dismiss, ECF No. 14, and for judgment on the pleadings, ECF No. 17, are now moot. Defendants' later motions, ECF Nos. 20 and 22—to which Skin Studio filed responses in opposition, ECF Nos. 36 and 37, and Defendants replied, ECF Nos. 38 and 39—are now ripe for review. The court, having granted Skin Studio's request to file a sur-reply, additionally considers the arguments raised therein. [ECF Nos. 46–47.]

## LEGAL STANDARD

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a 12(b)(6) motion, the court must "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court should not, however, accept mere legal conclusions as true, and a pleading that offers only "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

2

**DISCUSSION**

Defendants move to dismiss Skin Studio's Amended Complaint in its entirety. [ECF Nos. 20, 22.] They argue Skin Studio fails to state viable claims under Article 4A of the Uniform Commercial Code ("U.C.C.") and that its claims for negligence, money had and received, and conversion are preempted by that statute. Defendants further argue Skin Studio does not sufficiently plead its claims under the South Carolina Unfair Trade Practices Act. Finally, Wells Fargo contends Skin Studio's claim for improper payment or debit of an account is also inadequately pled. The court addresses these arguments in turn.

## I.     U.C.C. Article 4A

Article 4A of the U.C.C., as adopted in the South Carolina Code, governs the specialized method of payment known as a "funds transfer" or a "wholesale wire transfer." *See* S.C. Code Ann. § 36-4A-102 cmt. A funds transfer is defined as a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." *Id.* § 36-4A-104(a). A payment order refers to "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary" where, among other requirements, "the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender[.]" *Id.* § 36-4A-103(a)(1). A funds transfer is considered complete when there is "acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.* § 36-4A-104(a). Here, the parties agree Wells Fargo was the "receiving bank" of the payment order, and JPMorgan was the "beneficiary's bank." [ECF Nos. 19 ¶¶ 30, 35; 20 at 3; 22-1 at 5.]

### A.     § 36-4A-201, *et seq.*

3

Skin Studio alleges Wells Fargo violated § 36-4A-201, *et seq.* [ECF No. 19 ¶¶ 31–33.] Under § 36-4A-202(a)–(b), a receiving bank is protected from liability for a payment order that a sender or its agent authorize or that is made pursuant to an agreed-upon, commercially reasonable security procedure. Skin Studio claims, however, that Wells Fargo is not entitled to this protection because the alleged transaction was unauthorized and because the bank failed to "exercise ordinary care" in verifying the corresponding payment order. [ECF No. 19 ¶ 31.]

Wells Fargo argues Skin Studio has not plausibly alleged the payment order was unauthorized. The bank specifically claims Skin Studio does not "allege that its account was compromised or that an unauthorized third-party gained access to the account." [ECF No. 20 at 4.] Wells Fargo thus contends the wire transfer must have been authorized by Skin Studio or its agents, since the complaint "offers no plausible [alternative] explanation." *Id.*

The court disagrees and finds that Skin Studio alleges a facially plausible claim under § 36-4A-201, *et seq.* Beyond Skin Studio's unequivocal statements that it did not authorize the order, *see* ECF No. 19 ¶¶ 15, 20, the complaint clearly alleges that third-party actors played an active role in the fraudulent scheme. Skin Studio states that "criminal customer[s,]" including a named "Lyric Nazario," "used the [JPMorgan] account to receive a fraudulent electronic transfer, initiated from Plaintiff's [Wells Fargo] Business Market Rate Savings account . . . as a fraudulent electronic wire instruction." *Id.* ¶ 13. Construing these allegations in Skin Studio's favor—as the court must do on a motion to dismiss—it is plausible that the third-party actors initiated the payment order, rather than Skin Studio or its agents. It thus finds Skin Studio "pleads factual content that allows the court to draw the reasonable inference" Wells Fargo processed an order Skin Studio did not authorize. *Iqbal*, 556 U.S. at 678. The court therefore denies Wells Fargo's motion to dismiss Skin Studio's § 36-4A-201, *et seq.* claim.

**B.    § 36-4A-207(b)(2)**

Skin Studio also brings a claim against JPMorgan under § 36-4A-207(b)(2), which applies when a payment order incorrectly describes the beneficiary. [ECF No. 19 ¶ 41.] Under § 36-4A-207(b)(2), a beneficiary's bank is liable for losses from a faulty transaction if it facilitates a payment order, despite knowing a discrepancy exists between the name on the order and the name associated with the account number. The beneficiary's bank is only responsible, however, if it has "actual knowledge" of the "misdescription" at the time it processes the faulty order. *See* S.C. Code Ann. § 36-4A-207(b)(2) cmt. 2. Here, Skin Studio claims the names listed on the payment order and associated with the account number did not match and that JPMorgan knew, or should have known, of the discrepancy. [ECF No. 19 ¶¶ 22, 41.]

JPMorgan argues, among other things, that Skin Studio inadequately pleads JPMorgan's knowledge of the discrepancy.[1] [ECF No. 22-1 at 6.] The court agrees. Skin Studio claims "[JPMorgan] knew that the name and the account number did not match[.]" [ECF No. 19 ¶ 41.] But, as the JPMorgan correctly notes, Skin Studio does not allege any facts to support this assertion. [ECF No. 22-1 at 6.] Indeed, the complaint contains facts to suggest the bank lacked knowledge of the discrepancy. According to Skin Studio, JPMorgan "chooses to fully automate the receipt" of wire transfers, does not monitor for "name/account number mismatches[,]" and "ignore[s] mismatches between account names and account numbers on inbound" transactions. [ECF No. 19 ¶ 12.] Moreover, under § 36-4A-207(b)(1), JPMorgan had no obligation to verify

---

[1] The court notes that some jurisdictions do not allow a payment "originator" to sue a beneficiary's bank under U.C.C. § 4A-207(b)(2). *See e.g.*, *Frankel-Ross v. Congregation OHR Hatalmud,* No. 15-civ-6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016) (citing *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998)). The court does not resolve whether Skin Studio is barred as an originator under South Carolina law because, in any event, its claim fails for inadequate pleading.

the name on the order and on the account matched.[2]  All considered, Skin Studio does not sufficiently allege JPMorgan possessed "actual knowledge" of the alleged discrepancy. JPMorgan's motion to dismiss Skin Studio's § 36-4A-207(b)(2) claim is therefore granted.

### C.     § 36-4A-211

Skin Studio also brings claims against both Defendants under § 36-4A-211, which governs cancellations and amendments of payment orders.  The provision specifies that adjustments to orders are only "effective" under certain conditions.  S.C. Code Ann. § 36-4A-211.  If the "sender" communicates its cancellation or amendment request *before* payment is accepted, an adjustment is effective "if notice of the communication is received [by the bank] at a time and in a manner affording [it] . . . a reasonable opportunity to act[.]"  *Id.* § 36-4A-211(b) (emphasis added).  "*After* a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation without agreement of the bank."  *Id.* § 36-4A-211(c) (emphasis added).  Here, Skin Studio claims it properly requested cancellation from both Defendants but was ignored.  [ECF No. 19 ¶¶ 34, 40.]

### 1.  Cancellation Notice to Wells Fargo

Skin Studio specifically claims Wells Fargo received a cancellation order from Skin Studio's agent and had an opportunity to prevent the fraud but "took no action to contact the beneficiary['s] bank[.]"  [ECF No. 19 ¶¶ 16–17.]  Skin Studio also claims the cancellation was timely, as it alerted Wells Fargo of fraudulent activity on "the same day the wire was initiated" and requested the transfer be cancelled "virtually immediately."  *Id.* ¶¶ 16, 37.

---

[2] As the comment to § 36-4A-207(b) indicates, the drafters imposed a knowledge requirement so as not to disturb the "substantial economies of operation" associated with automated processing.

Wells Fargo argues dismissal is appropriate because Skin Studio did not allege the bank agreed to a cancellation. [ECF No. 20 at 5.] The court disagrees. Under § 36-4A-211, such an agreement is only required after payment is accepted. Before acceptance, Skin Studio needed only to notify Wells Fargo "at a time and in a manner affording [it] . . . a reasonable opportunity to act" for the cancellation to be effective. § 36-4A-211(b). Construed in Skin Studio's favor, the complaint suggests Skin Studio notified Wells Fargo of cancellation immediately after the fraudulent initiation. The court thus finds it plausible that Skin Studio satisfied the notice requirements of § 36-4A-211(b). Wells Fargo's motion to dismiss Skin Studio's § 36-4A-211 claim is therefore denied.

### 2. Cancellation Notice to JPMorgan

Skin Studio argues JPMorgan likewise "received notice of the cancellation . . . but failed to timely act, resulting in the loss." [ECF No. 19 ¶ 40.] The court finds, however, that Skin Studio does not plausibly allege an effective cancellation against JPMorgan under either § 36-4A-211(b) or (c).

As JPMorgan notes, Skin Studio provides no factual support for its "conclusory allegation" that the bank "received notice of cancellation." [ECF No. 22-1 at 7.] Skin Studio does not claim to have notified JPMorgan itself, as it alleges against Wells Fargo. *Compare* ECF No. 19 ¶ 16 *with id.* ¶ 40. Skin Studio also admits that "Wells Fargo took no action to contact the beneficiary['s] bank, [JPMorgan.]" [ECF No. 19 ¶ 17.] And the complaint provides no alternative explanation as to who—beyond Wells Fargo or Skin Studio's own agents—requested cancellation from JPMorgan. Nor does it allege when they did so or in what manner. Skin Studio thus does not plead facts to plausibly show JPMorgan received the cancellation "at a time and in a manner affording [it] . . . a reasonable opportunity to act" before accepting the payment order, *see* § 36-

4A-211(b), or that JPMorgan agreed to cancel the order after accepting the payment, *see* § 36-4A-211(c). JPMorgan's motion to dismiss Skin Studio's § 36-4A-211 claim is therefore granted.

**II.    Negligence, Money Had and Received, and Conversion**

Skin Studio also presents claims against both Defendants for negligence, conversion, and money had and received. [ECF No. 19 ¶¶ 49–59, 69–84.] Wells Fargo and JPMorgan argue these common law actions are preempted by Article 4A of the U.C.C., as adopted in the South Carolina Code. [ECF Nos. 20 at 7–9, 11–12; 22-1 at 11–12, 15–17.]

The court recognizes the doctrine of preemption, which applies to claims that overlap with the rights and obligations imposed by Article 4A. *See e.g.*, *Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 815–16 (D.S.C. 2014). In drafting Article 4A, "a deliberate decision was made . . . to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." S.C. Code Ann. § 36-4A-102 cmt. The Article 4A rules were "intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." *Id.*

Defendants argue Skin Studio—in stating claims for negligence, conversion, and money had and received—impermissibly resorts to legal principles beyond the U.C.C. provisions. In response, Skin Studio concedes that each claim "appears to be preempted[.]" [ECF Nos. 36 at 8, 10; 37 at 10, 12.] The court agrees that Skin Studio's claims fall within the regime of Article 4A and concern "the mechanics of how a funds transfer was conducted[.]" *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010); *see also Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.,* 621 S.E.2d 38, 41 (S.C. 2005) ("Only where the U.C.C. is

8

incomplete does the common law provide applicable rules.").  It therefore grants Defendants'

unopposed motions to dismiss the claims as preempted.

### III.    South Carolina Unfair Trade Practices Act

Skin Studio also brings claims against both Defendants under the South Carolina Unfair

Trade Practices Act ("SCUTPA").  [ECF No. 19 ¶¶ 60–68 (citing S.C. Code Ann. § 39-5-10, *et*

*seq.*).]  It contends Defendants collected transfer fees from the alleged transaction and still retain

them "despite knowing of its fraud." *Id.* ¶ 62.  Skin Studio further alleges Defendants "have a

pattern and practice of misinforming and misleading commercial victims of fraud" by making

false statements in investigation letters. *Id.* ¶ 63.  Skin Studio argues these actions constitute an

unfair and deceptive trade practice.

To establish a claim under the SCUTPA, a plaintiff must show that "(1) the defendant

engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a

result of the trade practice; and (3) the unlawful trade practice had an adverse impact on the public

interest." *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 579 (D.S.C. 2003), *aff'd sub nom.*

115 F. App'x 636 (4th Cir. 2004) (citing S.C. Code Ann. § 39-5-140(a)).  To satisfy the third

element, a litigant must show either that (1) "the same kind of actions occurred in the past, thus

making it likely the action will continue absent some deterrence," or (2) "the company's

procedures create a potential for repetition of the unfair and deceptive acts." *deBondt v. Carlton*

*Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000); *see also Singleton v. Stokes Motors,*

*Inc.*, 595 S.E.2d 461, 466 (S.C. 2004).  If a plaintiff proves neither, relief will not be available to

redress a merely "private wrong." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton*

*Head Island, Inc.*, 351 S.E.2d 347, 350 (S.C. Ct. App. 1986).

Defendants argues Skin Studio does not adequately plead an "adverse impact on the public

interest." [ECF Nos. 20 at 9–11; 22-1 at 12–15.]  As they note, Skin Studio states that Defendants'

actions "have a real and substantial potential for repetition and affect the public interest[.]" [ECF No. 19 ¶ 67.] However, to support this claim, Skin Studio alleges only that Defendants have been sued in other courts for conduct resembling its SCUTPA claims. *Id.* ¶¶ 65, 67. Defendants correctly argue that this "conclusory assertion" is not enough to survive a motion to dismiss. [ECF No. 22-1 at 14; *see also* ECF No. 20 at 10.] "South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992). And, as courts in this district have noted, "without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts." *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013); *see also Gilbert v. Wells Fargo Bank, N.A.*, No. 2:23-CV-04448-RMG, 2023 WL 6880410, at *5 (D.S.C. Oct. 17, 2023) ("[A] claim against a party is not probative of wrongdoing."). The court thus finds Skin Studio's SCUTPA claims facially implausible and grants Defendants' motions to dismiss.

## IV.     Improper Payment/Debit of Account

Finally, Skin Studio presents a claim against only Wells Fargo for improper payment or debit of an account. [ECF No. 19 ¶¶ 44–48.] Skin Studio claims "[t]he parties were bound by a contractual relationship requiring Defendant to debit Plaintiff's account or initiate payments therefrom according to the instructions of the Plaintiff." *Id.* ¶ 45. Skin Studio further alleges it "performed the contract as required" but that "Defendant breached the contract." *Id.* ¶ 46. It seeks damages arising from the alleged breach. *Id.* ¶ 48.

Wells Fargo argues Skin Studio does not state a plausible claim for relief.[3] [ECF No. 20 at 6–7.] To recover for breach of contract, Skin Studio must prove "(1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach." *Hennes v. Shaw*, 725 S.E.2d 501, 506 (S.C. Ct. App. 2012) (citing *Fuller v. E. Fire & Cas. Ins. Co.*,124 S.E.2d 602, 610 (S.C. 1962)). As Wells Fargo notes, Skin Studio "does not cite a single provision of the parties' contract in support" of its claim and fails to demonstrate how the bank fell short of its contractual obligations. [ECF No. 20 at 7.] Thus, Skin Studio "has not alleged any actual breach of the parties' contract." *Id.* at 6. Its claim against Wells Fargo for improper payment or debit of an account is therefore legally insufficient on its face.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 20 and 22, are **GRANTED** in part and **DENIED** in part. Wells Fargo's motion to dismiss Skin Studio's claim under S.C. Code Ann. §§ 36-4A-201, *et seq.* and 36-4A-211 are denied. Its motion to dismiss Skin Studio's claim for improper payment or debit of an account is granted. The court also grants JPMorgan's motion to dismiss Skin Studio's claim under §§ 36-4A-207(b) and 36-4A-211. Both Defendants' motions to dismiss are granted as to Skin Studio's claims for negligence, money had and received, conversion, and violation of the SCUTPA, S.C. Code Ann. § 39-5-10, *et seq.* Defendants' motions to dismiss Skin Studio's original complaint, ECF No. 14 and for judgment on the pleadings, ECF No. 17, are **DISMISSED** as moot.

**IT IS SO ORDERED.**

January 9, 2024                                         Sherri A. Lydon
Columbia, South Carolina                    United States District Judge

---

[3] The court does not address whether Skin Studio's claim for wrongful payment is also preempted by Article 4A, as Wells Fargo does not raise that argument.